# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GA TELESIS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>GKN AEROSPACE, CHEM-TRONICS, INC., a California corporation; POWERTURBINE, INC.,<br><br>Defendants. | CASE NO. 12-CV-1331-IEG (BGS)<br><br>**ORDER GRANTING MOTION TO STRIKE PORTIONS OF POWERTURBINE'S COUNTERCLAIM**<br><br>[Doc. No. 37] |
| GKN AEROSPACE, CHEM-TRONICS, INC., a California corporation,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>POWERTURBINE, INC.<br><br>Third-Party Defendant, | |
| POWERTURBINE, INC.,<br><br>Counter Claimant,<br><br>v.<br><br>GKN AEROSPACE, CHEM-TRONICS, INC., a California corporation,<br><br>Counter Defendant. | |

Presently before the Court is the motion of Defendant/Third Party Plaintiff/Counter Defendant GKN Aerospace, Chem-Tronics, Inc. ("GKN") to strike portions of Defendant/Third Party Defendant/Counter Claimant Powerturbine, Inc.'s

("Powerturbine" or "PT") counterclaims pursuant to California Code of Civil Procedure § 425.16.  [Doc. No. 37, <u>GKN's Mot.</u>]  For the reasons below, the Court **GRANTS** the special motion to strike.

**<u>BACKGROUND</u>**

The following facts are mostly from Powerturbine's counterclaims. Powerturbine states that it is a used parts manager in the aviation parts industry. [Doc. No. 5, <u>PT's Counterclaims</u> ¶ 5.]  Powerturbine describes its business model as follows:  Powerturbine first locates surplus airplane parts which may be reconditioned or repaired, and then engages a Federal Aviation Administration ("FAA") certified repair station, such as GKN, to determine the airworthiness of the parts, and to repair and overhaul them if possible.  [<u>Id.</u>  ¶¶ 5-9.]  Powerturbine alleges that it relies on the repair stations to determine whether the parts are airworthy.  [<u>Id.</u>  ¶ 11.]

GKN in its motion to strike states that Powerturbine's admitted business model is to remove documentation which is affixed to parts to indicate defects ("reject tags") before sending them to repair stations for potential repair and overhaul.  [Doc. No. 37-1, <u>GKN's Mot.</u> at 9; Doc. No. 37-5, Ex. 1 Deposition of Fred Grether, President of Powerturbine at 9-10, 12-13.]

This case involves the purchase and sale of 63 airplane engine fan blades ("fan blades").  [<u>Id.</u> ¶ 18.]  On June 11, 2010, Powerturbine issued repair orders to GKN relating to the fan blades, which Powerturbine sourced from Saudi Arabian Airlines ("SAA").  [<u>Id.</u>]  A repair station in Germany, Maintenance Hannover GmbH ("MTU"), had removed the fan blades from SAA airplane engines, and had "rejected them from service" for insufficient wall thickness.  [<u>Id.</u>]  "Pursuant to Powerturbine's [business model], Powerturbine desired to obtain a 'second opinion repair' by GKN in order to determine whether the [f]an [b]lades could be given [r]epairs to an airworthy condition again."  [<u>Id.</u>]

GKN in its motion states that it did not know that MTU had previously

rejected the fan blades.  [Doc. No. 37-1, GKN's Mot. at 9.]  GKN argues that based on industry practice, MTU would have affixed reject tags to the blades after concluding the walls were too thin.  [Id. at 10.] GKN states that Powerturbine sent the fan blades to GKN without reject tags.  [Id.]

After its inspection, GKN rejected 6 of the 63 fan blades as "not being suitable for repair," and deemed the remaining 57 to be suitable for repairs.  [Doc. No. 5, PT's Counterclaims ¶ 23.]  GKN repaired those 57 fan blades, certified them as "overhauled," and deemed them airworthy.  Powerturbine subsequently sold 27 of the fan blades on behalf of SAA to AirLiance Materials ("AirLiance").  [Id. ¶ 24.] Powerturbine sold the remaining 30 fan blades on behalf of SAA directly to GKN.  [Id.]  GKN thereafter sold 22 fan blades to Plaintiff GA Telesis, LLC ("GAT"), which then re-sold the blades to Delta Airlines ("Delta").  GKN sold 8 blades to AeroTurbine, Inc. ("AeroTurbine").  [Id. ¶ 25.]

The following facts regarding the discovery of the defective fan blades and subsequent investigation are from GKN's motion.  In early June 2011, GKN states that it learned there was a problem with the fan blades when Delta sent an engine with some of the fan blades to MTU for maintenance.  [Doc. No. 37-1, GKN's Mot. at 11.]  MTU discovered that it had previously removed these blades from service due to insufficient wall thickness.  [Id.]  Delta then notified GKN of the situation.  [Id.]  In July 2011, GKN obtained three of the fan blades from Delta, and confirmed that the blades did have thin walls.  [Id.]  GKN subsequently notified the FAA of the situation in order to "giv[e] the FAA a 'heads-up' about the issue because Delta might make a self-report" and "to report what [GKN] believed was improper conduct by whoever removed the reject tags from the blades."  [Id. at 12.] The FAA and the Department of Transportation ("DOT") subsequently began an investigation.  [Id. at 12-13.]

On March 5, 2012, "the FAA directed GKN to recall and quarantine the fan blades sold to AirLiance, and coordinate with AirLiance to that effect."  [Id. at 13.]

On March 6, 2012, GKN sent a letter to AirLiance regarding the quarantine.  [Id.]  GKN also began communicating with GAT and AeroTurbine regarding "the status of the FAA's inquiry."  [Id.]  These parties communicated with their own customers.  [Id. at 13-14.]  Several parties requested additional information from GKN regarding the background of the investigation request.  [Id. at 14.]

On March 14, 2012, GKN "sent almost identical letters to the three primary purchasers of the fan blades – GAT, AeroTurbine, and AirLiance" (collectively "the customers").  [Id.]  The letters describe the fan blades' defective condition and how the fan blades were previously rejected.  The letters also state that GKN received the fan blades from Powerturbine with no reject tags.  [Id.]

On June 4, 2012, GAT filed a civil complaint in this Court against GKN.  [Doc. No. 1.]  GKN filed a third-party complaint against Powerturbine on June 5, 2012.  [Doc. No. 3.]  Powerturbine filed a counterclaim against GKN on November 16, 2012.  [Doc. No. 33.]  GKN subsequently filed the present motion to strike portions of Powerturbine's counterclaim.  [Doc. No. 37.]

## ANALYSIS

A SLAPP suit is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights."  Dickens v. Provident Life and Acc. Ins. Co., 117 Cal. App. 4th 705, 713 (2004) (internal quotation omitted).  Under the California anti-SLAPP provisions, a litigant may move to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Code Civ. P. § 425.16(b)(1).  The anti-SLAPP provisions cover statements "made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."  Cal. Code Civ. P. § 425.16(e)(2).  The statute also encompasses "conduct

in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. P. § 425.16(e)(4). The anti-SLAPP provisions "shall be construed broadly." Cal. Code Civ. P. § 425.16(a).

When ruling on a § 425.16 motion to strike, "a court generally should engage in a two-step process: First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." Taus v. Loftus, 40 Cal. 4th 683, 703 (2007); see also Daniels v. Robbins, 182 Cal. App. 4th 204, 215 (2010).

GKN moves to dismiss Powerturbine's third claim for intentional interference with prospective economic advantage, fourth claim for negligent interference with prospective economic advantage, fifth claim for trade libel, sixth claim for defamation, and eighth claim for unfair competition because they are "all based on GKN's statements to the FAA and to the customers . . . which are protected by the anti-SLAPP statute, because they were made in connection with an issue under consideration in an official proceeding, and also concerned a matter of public interest." [Doc. No. 37-1, GKN's Mot. at 18.] Powerturbine's eighth cause of action relies in part on GKN's statements to the FAA and the customers, and in part on other theories. [Doc. No. 33, PT's Counterclaims at 22.] GKN also argues that Powerturbine cannot demonstrate a reasonable probability of prevailing on its claims. [Doc. No. 37-1, GKN's Mot. at 30.]

I.      **Statements Protected by Anti-SLAPP Statute**

GKN argues that its statements to the FAA and to the customers are protected by the anti-SLAPP statute because "they were made in connection with an issue under consideration in an official proceeding, and also concerned a matter of public interest." [Doc. No. 37-1, GKN's Mot. at 18; Doc. No. 37-3, Ex. 4, E-mail to FAA

at 46.[1]]  Powerturbine argues that "none of the challenged communications are protected under the anti-SLAPP statute, since they are commercial speech under section 425.17."  [Doc. No. 38, PT's Opp. at 16.]

### A.   Statements Made in Connection with an Issue under Consideration in an Official Proceeding

GKN argues that its "statements were plainly made in connection with an 'official proceeding authorized by law'" because "[a]s a result of [Alan] Clendenon's [GKN's Quality Assurance Manager] communications with the FAA, the FAA began an investigation, which in turn led to an official criminal investigation being conducted by the U.S. Department of Transportation."  [Doc. No. 37-1, GKN's Mot. at 19 (internal quotation omitted); Doc. No. 37-2, Clendenon Decl. ¶ 12.]  GKN argues that its communications with the customers were also in connection with the FAA and DOT investigation, "because they all grew out of, and referred to, the FAA's directive that the blades be quarantined, and the FAA reviewed and approved the communications before they were sent."  [Doc. No. 37-1, GKN's Mot. at 20; Doc. No. 37-3, Ex. 4, E-mail to FAA at 46; Doc. No. 37-3, Ex. 15, E-mail from FAA at 69.[2]]  GKN argues that its "communications with the customers also related to the FAA and DOT's effort to determine how the defective blades were re-certified, and what should be done about the situation."  [Id.; see

---

[1] Powerturbine objects to this exhibit under Federal Rules of Evidence 802 (hearsay) and 1002 (best evidence).  [Doc. No. 38-2, Objections to Exhibits at 3.]  However, Powerturbine presents neither its reasoning as to why this exhibit should be excluded under these rules, nor identifies to which portions of the e-mail it objects.  GKN responds that the e-mail is not being offered for the truth of the matter asserted.  [Doc. No. 42, GKN's Response to Objections at 8-9.]  Because the e-mail is not being offered for the truth of the matter asserted, the Court overrules the objection under Rule 802.  GKN states that it is "not clear in what respect Powerturbine believes the e-mail violates Rule 1002." [Id.]  Because it is unclear why Powerturbine objects under Rule 1002, the Court overrules the objection under Rule 1002.

Powerturbine makes many evidentiary objections to GKN's exhibits.  However, to the extent that the Court does not rely on the documents, the Court does not address those objections.

[2] Powerturbine objects to this exhibit under Federal Rule of Evidence 802 (hearsay).  [Doc. No. 38-2, Objections to Exhibits at 5.]  Again, Powerturbine neither presents its reasoning as to why this exhibit should be excluded under this rule, nor identifies to which portions of the e-mail it objects.  GKN responds the e-mail is not being offered for the truth of the matter asserted.  [Doc. No. 42, GKN's Response to Objections at 13.]  Because the e-mail is not being offered for the truth of the matter asserted, the Court overrules the objection.

1   Doc. No. 37-3, Ex. 4, E-mail to FAA at 46.]  Powerturbine in its opposition does not

2   specifically address GKN's arguments regarding whether the statements were made

3   in connection with an issue under consideration in an official proceeding.

4        The anti-SLAPP provisions cover statements "made in connection with an

5   issue under consideration or review by a legislative, executive, or judicial body, or

6   any other official proceeding authorized by law."  Cal. Code Civ. P. § 425.16(e)(2).

7   Statements in anticipation of litigation are "entitled to the benefits of section 425.16"

8   "[j]ust as communications prepatory to or in anticipation of the bringing of an action

9   or other official proceeding are within the protection of the litigation privilege of

10  Civil Code section 47."  Briggs, 19 Cal. 4th at 1115 (internal quotation omitted); see

11  also Dickens, 117 Cal. App. 4th at 714. The anti-SLAPP provision can cover

12  statements made between private individuals.  Briggs v. Eden Council for Hope &

13  Opportunity, 19 Cal. 4th 1106, 1116-17 (1999).

14       California courts of appeal have found that communications with government

15  entities and private parties prior to an investigation are covered by the anti-SLAPP

16  statute.  A California court of appeal found that letters to celebrities about the

17  defendant's intent to lodge a complaint to the Attorney General seeking an

18  investigation into whether charities received proceeds from the celebrities' recording

19  was a communication made in connection with an official proceeding authorized by

20  law.  Dove Audio, Inc. v. Rosenfield, Meyer & Susman, 47 Cal. App. 4th 777, 784

21  (1996).  The court held that the constitutional right to petition includes the basic act

22  of filing litigation or otherwise seeking administrative action.  Id.  Another

23  California court of appeal found that "contact with the executive branch of

24  government [U.S. Attorney's Office] and its investigators about a potential violation

25  of law . . . was preparatory to commencing an official proceeding authorized by law:

26  a criminal prosecution for mail fraud."  Dickens, 117 Cal. App. 4th at 714.

27       In a California Supreme Court case, the defendant helped a tenant file a

28  complaint against a landlord with the federal Department of Housing and Urban

Development ("HUD").  The landlord sued the defendant, alleging that the defendant made defamatory statements about it during HUD's investigation, including during board of director meetings of the defendant.  Briggs, 19 Cal. 4th at 1110-11.  The California Supreme Court held that the plaintiff's claims should be dismissed pursuant to the anti-SLAPP statute because the statements were made in connection with an official proceeding.

FAA investigations are authorized by law because Congress tasked the FAA with policing compliance with rules it implements to govern the aviation industry through investigations.  See 14 C.F.R. §§ 11.1 et seq. and 13.1 et seq.

Here, the statements to the FAA were made before and during the FAA and DOT investigations.  [See Doc. No. 37-3, Ex. 4, E-mail to FAA at 46; Doc. No. 37-2, Clendenon Decl. ¶ 12.]  Therefore, the statements to the FAA are covered by the anti-SLAPP statute as statements made in connection with an issue under consideration in an official proceeding.  GKN's statements to the customers are also covered because they pertained to the FAA's request that the defective fan blades be quarantined, which was made during the course of its investigation,.  [Doc. No. 37-3, Ex. 15 E-mail from FAA at 69.]

**B.     Issue of Public Interest**

GKN also argues that its statements are protected by the anti-SLAPP statute because they "all concerned a matter of public interest."  [Doc. No. 37-1, GKN's Mot. at 21-22.]  GKN contends that its statements, which "all concerned how apparently defective fan blades were re-introduced to the market and placed on commercial aircraft engines . . . as well as what to do about the problem once it materialized," are regarding a matter of public interest.  [Id.]  Powerturbine does not specifically address GKN's arguments regarding this issue in its opposition.

In addition to protecting statements made in connection with an official proceeding, the anti-SLAPP statute also protects any conduct "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free

speech in connection with a public issue or an issue of public interest."  Cal. Code Civ. P. § 425.16(e)(4).  "Like the SLAPP statute itself, the question whether something is an issue of public interest must be construed broadly."  Hecimovich v. Encinal Sch. Parent Teacher Org., 203 Cal. App. 4th 450, 464 (2012) (internal quotation omitted).  "An issue of public interest is any issue in which the public is interested."  Id. at 465 (internal quotation omitted) (emphasis omitted).  "A matter of public interest should be something of concern to a substantial number of people. . . . [T]here should be some degree of closeness between the challenged statements and the asserted public interest. . . . [The statements] may encompass activity between private people."  Id. (internal citations and quotations omitted).

California courts have found the following issues to be of public interest under the anti-SLAPP statute:  statements made in public and privately to individuals regarding placement of a shelter for battered women in a neighborhood, Averill v. Super. Ct., 42 Cal. App. 4th 1170 (1996); and statements regarding the fitness of a coach for young children, Hecimovich, 203 Cal. App. 4th at 465.

GKN's statements to the FAA and the customers plainly have a significant degree of closeness to the public interest of airplane safety.  See id. at 465.  [See Doc. No. 37-3, Ex. 4, E-mail to FAA at 46.]  As GKN's statements concern an issue of public interest because they concern the safety of airplane parts, they are covered by the anti-SLAPP statute under this ground as well.

**C.    Commercial Speech under § 425.17**

Powerturbine focuses its arguments on the commercial speech exception, and contends that the anti-SLAPP statute is inapplicable to GKN's statements to the customers because they constitute commercial speech.  [Doc. No. 38, PT's Opp. at 19.]

Section 425.17(c) states that "[s]ection 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services . . . arising from any statement or conduct by that person if

both of the following conditions exist:  (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.  (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . ."

The California Supreme Court has clarified the statute, and stated that the commercial speech exemption applies when:  "(1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct meets the definition set forth in section 425.17(c)(2)." Simpson Strong-Tie Co., Inc. v. Gore, 49 Cal. 4th 12, 30 (2010).

"The commercial speech exemption . . . is a statutory exemption to section 425.16 and should be narrowly construed."  Simpson Strong-Tie, 49 Cal. 4th at 22 (internal quotations omitted).  "The burden of proof as to the applicability of the commercial speech exemption . . . falls on the party seeking the benefit of it." Id. at 26.

The Court first addresses the third factor of the commercial speech exemption: whether GKN's statements were made for the purpose of obtaining approval for, promoting, or securing sales or leases of its goods or services.

Powerturbine, without citing any case law, argues that "GKN clearly made the

challenged communications in order to promote its services, and to shift the blame and the brunt of customer pushback to Powerturbine for any wrongfully certified parts, and thereby promote itself as a competent, trusted provider of overhaul services."  [Doc. No. 38, PT's Opp. at 20.]  Powerturbine argues that the "letters suggest an overall impression that GKN acted diligently in discovering the condition and responsibly by notifying those entities of the condition."  [Id.; see, e.g., Doc. No. 37-3, Ex. 19 Letter to Aeroturbine at 84.]  It also states that "GKN's letters appear designed clearly to suggest it acted pursuant to a proper overhaul standard, and by referencing the FAA in its letters, cloaks itself with an air of authority."  [Doc. No. 38, PT's Opp. at 21; see Doc. No. 37-3, Ex. 4, Letter to FAA at 46.]

GKN argues that the "purpose of [its] statements was not to sell or promote its services, and the statements were not made in the course of delivering services." [Doc. No. 44, GKN's Reply at 8.]  GKN argues that it sent the letters twenty-one months after it worked on the fan blades, discussed the defective condition of the blades, and presented the FAA's directive that they be quarantined.  [Id. at 8-9; see, e.g., Doc. No. 37-3, Ex. 16 Letter to AirLiance at 74; Doc. No. 37-3, Ex. 19 Letter to Aeroturbine at 84.]  GKN argues that "the fact the letters may have been in GKN's economic interest, or put GKN in a positive light, is not enough because the letters were not *motivated* by the desire to sell or promote."  [Doc. No. 44, GKN's Reply at 9.]

California courts consider the purpose motivating the communication when evaluating this factor.  One California court of appeal held that a defendant's statements were for the purpose of forestalling environmental approval of the plaintiff's project, and not for the purpose of promoting the defendant's hotel business.  Sunset Millenium Associates v. LHO Grafton Hotel, 146 Cal. App. 4th 300, 313 (2006).  The court held that therefore, the commercial speech exemption did not apply.  Id.  Another California court of appeal held that even though an e-mail was directed at customers, when it did not contain statements about either

parties' business operations, goods or services, but instead sought to "set the record

straight" with regards to plaintiff's allegations and claims against the defendants, the

email was not to obtain approval for or promote their business.  Contemporary

Servs. Corp. v. Staff Pro Inc., 152 Cal. App. 4th 1043, 1054 (2007).  In another

California court of appeal case, when bondholders stood to gain financially from the

default of the issuer, the court held that the bondholders' statements to sabotage the

issuer's attempt to sell its interests which resulted in the bondholders initiating

involuntary bankruptcy proceedings upon the issuer's default fell within the

commercial speech exemption.  Brill Media Co., LLC v. TCW Group, Inc., 132 Cal.

App. 4th 324, 332-36, 342 (2005).

Because GKN's communications to the customers were prompted by the

FAA's request that the defective fan blades be quarantined [Doc. No. 37-2,

Clendenon Decl. ¶ 15[3]], the statements were not made for the purpose of promoting

GKN's business, but rather to inform the customers about the situation surrounding

the defective fan blades and the FAA's request to quarantine them.  As Powerturbine

is unable to establish the third factor, the Court finds that the commercial speech

exemption does not apply.

### 1.   Statements Merely Incidental to Claims

Even assuming the commercial exemption may apply to GKN's statements to

the commercial entities, GKN argues that the anti-SLAPP statute nevertheless

applies because its statements to the FAA are not "merely incidental" to

Powerturbine's claims.  [Doc. No. 44, GKN's Reply at 5-6.]  GKN argues that its

statements to the FAA constitute "protected conduct" under the anti-SLAPP statute,

and "Powerturbine's reliance on those statements as a basis for GKN's liability is

not 'merely incidental' to the claims being attacked.  [Id. at 6.]  GKN argues that

---

[3] Powerturbine objects to this paragraph of Clendenon's declaration on the basis of relevance, and because it presents a legal conclusion.  [Doc. No. 38-2, Objections to Exhibits at 7.]  The Court overrules the objection on the basis of relevance as the testimony is relevant to explain why GKN sent the letters.  However, the Court sustains the objection as to Clendenon's reference to acting without malice, as this is a legal conclusion.

"even if Powerturbine's allegations about GKN's statements to the other commercial entities were removed from the Counterclaim, Powerturbine's allegations about GKN's alleged misrepresentations to the FAA still stand alone as an 'independent basis' for liability."  [Id.]

"In general, whether a cause of action is subject to a motion to strike under the SLAPP statute turns on whether the gravamen of the cause of action targets protected activity."  Haight Ashbury Free Clinics, Inc. v. Happening House Ventures, 184 Cal. App. 4th 1539, 1550 (2010).  "If liability is not based on protected activity, the cause of action does not target the protected activity and is therefore not subject to the SLAPP statute."  Id.

"Where a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.16 unless the protected conduct is 'merely incidental' to the unprotected conduct."  Mann v. Quality Old Time Serv., Inc., 120 Cal. App. 4th 90, 103 (2004) (holding that because defendants' reports to government agencies formed a substantial part of the factual basis for the claims, the claims were subject to the anti-SLAPP statute even though they were also based on unprotected statements);[4] see also Haight Ashbury Free Clinics, 184 Cal. App. 4th at 1551; Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP, 133 Cal. App. 4th 658, 671 (2005).  Mixed causes of actions are subject to § 425.16 if "at least one of the underlying acts is protected conduct."  Salma v. Capon, 161 Cal. App. 4th 1275, 1287 (2008).

"[T]he pleading of other . . . 'unprotected' theories of liability does not eliminate or reduce the chilling effect on the exercise of free speech and petition: the defendant still faces the burden of litigation and potential liability for acts deemed protected by the SLAPP statute."  Haight Ashbury Free Clinics, 184 Cal.

---

[4] Although the Mann court stated that the issue of whether a cause of action that alleges both protected and unprotected activity is subject to § 425.16 "is currently under review by the California Supreme Court" and provided the names of the two cases which raised this issue, those two cases were disposed of on other grounds.  Mann, 120 Cal. App. 4th at 103.

App. 4th at 1551.  "[A] plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and unprotected activity under the label of one 'cause of action.'"  Fox Searchlight Pictures, Inc. v. Paladino, 89 Cal. App. 4th 294, 308 (2001).

Upon reviewing the counterclaims at issue in this motion, all of them reference the "GKN Misrepresentations," which Powerturbine defines in its counterclaims as including misrepresentations to the FAA.  [Doc. No. 33, PT's Counterclaims ¶¶ 30-31, 54, 65, 71, 79.]  The third counterclaim for intentional interference with prospective economic advantage also discusses "spreading false rumors in the aircraft parts industry."  [Id. ¶ 54.]  The fourth counterclaim for negligent interference with prospective economic advantage states that "GKN breached its duty of candor to the FAA by making the GKN Misrepresentations."  [Id. ¶ 65.]  The fifth counterclaim  for trade libel and disparagement states that "the recipients of [the GKN Misrepresentations], including without limitation the FAA . . . reasonably understood the statements and their references to be statements of fact, and to be disparaging and derogatory of Powerturbine . . . ."  [Id. ¶ 72.]  Although the sixth cause of action for defamation does not specifically mention the FAA by name, it does state that GKN published false statements, including the GKN Misrepresentations, to one or more third parties.  [Id. ¶ 79.]  Finally, Powerturbine's eighth cause of action for unfair competition depends on, *inter alia*, its wrongful interference, trade libel, and defamation claims.

GKN's communications with the FAA are not merely incidental to the counterclaims because they form a substantial part of the factual basis for the claims.  Accordingly, the challenged counterclaims are subject to the anti-SLAPP statute.

**II.      Reasonable Probability of Prevailing on Claims**

As GKN has demonstrated that Powerturbine's claims are based on statements which fall within the protection of the anti-SLAPP statute, the burden shifts to Powerturbine to demonstrate a reasonable probability of prevailing on its

1    counterclaims.  See Cal. Code Civ. P. § 425.16(b)(1).

2         GKN argues that Powerturbine's claims fail as a matter of law for the

3    following reasons:  (1) GKN's statements to the FAA were absolutely privileged

4    pursuant to the official proceedings privilege; (2) GKN's statements to the FAA

5    were privileged under the Noerr-Pennington doctrine; (3) GKN's statements to the

6    FAA and to the customers were protected by the "common interest" privilege; and

7    (4) GKN did not make any false statements which disparaged Powerturbine.  [Doc.

8    No. 37-1, GKN's Mot. at 22-31.]

9         **A.    Defenses**

10              **1.    Official Proceedings Privilege**

11        GKN argues that its statements to the FAA are absolutely privileged under the

12   official proceedings privilege.  [Doc. No. 37-1, GKN's Mot. at 22-24.]

13   Powerturbine argues that GKN's statements were neither logically related to the

14   instant litigation nor made in good faith.  [Doc. No. 38, PT's Opp. at 23-26.]

15   However, Powerturbine misunderstands the privilege because it focuses on the

16   instant litigation, rather than on the FAA and DOT investigations.  Powerturbine's

17   arguments relate to the litigation privilege, rather than to the official proceedings

18   privilege.  [See Doc. No. 44, GKN's Reply at 10.]  Powerturbine also focuses on the

19   fact that this privilege does not apply to GKN's statements in the letters to the

20   customers; however, GKN does not argue that this privilege applies to those

21   communications, but rather applies only to its statements to the FAA.

22        California Civil Code § 47(b) makes privileged any publication made in a

23   "legislative proceeding," a "judicial proceeding," or "any other official proceeding

24   authorized by law."  Cal. Code. Civ. P. § 47(b).  This section is "intended to assure

25   utmost freedom of communication between citizens and public authorities whose

26   responsibility is to investigate and remedy wrongdoing. . . . [B]oth the effective

27   administration of justice and the citizen's right of access to the government for

28   redress of grievances would be threatened by permitting tort liability for

12cv1331

communications connected with judicial or other official proceedings." Hagberg v. Cal. Fed. Bank FSB, 7 Cal. Rptr. 3d 803, 809 (2004) (internal quotation and citation omitted) (emphasis omitted). "[C]ourts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative and other official proceedings." Id. "[T]he privilege protect[s] communications to or from governmental officials which may precede the initiation of formal proceedings." Id. (internal quotation omitted).

"Although the statute originally was understood as applicable only to the tort of defamation, our cases . . . have extended the privilege it provides to other potential tort claims. . . . [T]he only tort claim [California courts] have identified as falling outside the privilege established by section 47(b) is malicious prosecution." Id. (internal citations omitted).

The Court finds that the official proceedings privilege applies to GKN's statements to the FAA because GKN's statements to FAA representatives were made in connection with an official proceeding. See Hagberg, 7 Cal. Rptr. at 809. [Doc. No. 37-2, Clendenon Decl. ¶¶ 7, 10, 12.[5]]  Because California courts have extended the privilege to other tort claims, see Hagberg, 7 Cal. Rptr. at 809, this privilege applies to all of Powerturbine's claims at issue in this motion. Therefore, to the extent that Powerturbine's counterclaims are based on GKN's statements to the FAA, Powerturbine does not have a reasonable probability of prevailing on the claims.  However, because Powerturbine's counterclaims are also based on GKN's statements to the customers, the Court must proceed to GKN's other defenses.

### 2.    Common Interest Privilege

GKN argues that its statements to the FAA and to the customers are protected by the common interest privilege.  [Doc. No. 37-1, GKN's Mot. at 26-30.]  GKN contends that the common interest privilege protects GKN's communications with

---

[5] Powerturbine objects to paragraphs 7 and 10 of Clendenon's declaration because it presents a legal conclusion.  [Doc. No. 38-2, Objections to Exhibits at 7.]  For the reasons stated above, the Court sustains the objection as to Clendenon's reference to acting without malice.

the FAA because "the FAA was plainly interested in GKN's statements about Powerturbine, given the FAA's responsibility to investigate problems in the aviation industry, enforce existing rules, and create new rules." [Id. at 27.] GKN argues that the FAA's follow-up communications with GKN and the fact that the FAA's inquiry led to a formal grand jury investigation run by DOT demonstrates the FAA's interest in GKN's communications. [Id. at 27-28.] GKN argues that its statements to the customers were also protected by the common interest privilege because "the customers were keenly interested in learning as much as possible about the origin and status of the fan blade dispute, and repeatedly asked GKN to provide information and keep them updated." [Id. at 28.]

Powerturbine argues that "GKN made the challenged communications, at a minimum, to AeroTurbine and AirLiance, two entities that are not parties to this lawsuit, and thus not "interested" parties. [Doc. No. 38, PT's Opp. at 28.]

"A privileged publication or broadcast is one made: . . . [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." Cal. Code Civ. P. § 47(c). "[T]his qualified privilege exists whether the publication be in the form of opinion or of false statements of fact." Williams v. Daily Review, Inc., 236 Cal. App. 2d 405, 416 (1965). The defendant bears the initial burden of establishing that the statement was made on a privileged occasion. Taus v. Loftus, 40 Cal. 4th 683, 721 (2007).

"The code affords no definition of the term 'interested' and the case law reflects an eclectic approach to its interpretation." Inst. of Athletic Motivation v. Univ. of Ill., 114 Cal. App. 3d 1, 7 (1980). "The word 'interested' as used in the statute refers to a more direct and immediate concern. That concern is something other than mere general or idle curiosity . . . ." Rancho La Costa, Inc. v. Superior

Court, 160 Cal. App. 3d 646, 664-65 (1980).

In Inst. of Athletic Motivation, the California court of appeal found that "[i]n [that] case, unlike in Rancho La Costa, the communication was not directed toward the world at large, but mainly toward those involved as professionals in the field of athletics.  And those to whom it was directed had a potential interest in the subject matter which went well beyond general or idle curiosity."  Inst. of Athletic Motivation, 114 Cal. App. 3d at 12.  "[T]he communication could affect the manner in which they conducted their professional activities."  Id.

Powerturbine's argument that AeroTurbine and AirLiance are not interested parties is not persuasive.  Powerturbine sold 22 of the fan blades to GKN after it completed its overhaul.  [Doc. No. 37-6, Decl. of Doug Ramey, Director of Sales & Marketing, Engine Products Aviation Repair, GKN ("Ramey") ¶ 2.]  GKN returned 27 of the fan blades to Powerturbine, which then sold them to AirLiance.  [Doc. No. X, PT's Counterclaims ¶ 24.]  Because AeroTurbine and AirLiance purchased the fan blades which the FAA wanted to quarantine [Doc. No. 37-2, Decl. of Clendenon ¶¶ 13-15, Exs. 3-6, 15, 19-21; Doc. No. 37-6, Decl. of Ramey ¶¶ 5-6; Doc. No. 37-3, Ex. 15 Letter from FAA at 69] and had subsequently sold the fan blades to other entities, the Court finds they are interested parties.  They have more than general or idle curiosity, and the communications affect their professional activities.  See Inst. of Athletic Motivation, 114 Cal. App. 3d at 12.

### a.     Malice

Powerturbine first makes a muddled statement that "the statements appear to be made with malice, inasmuch as GKN's communications with the FAA, in which it admits [Powerturbine] is a 'well known surplus parts supplier' evidence disputed material facts as to GKN's knowledge of [Powerturbine's Parts Management Program], and whether GKN knew [Powerturbine] submitted previously rejected parts for second opinions."  [Doc. No. 38, PT's Opp. at 28; Doc. No. 46-27, Ex. 27, E-mail from Clendenon to Kenneth Wong, FAA Aviation Safety Inspector

("Wong"); see Doc. No. 37-3, Ex. 4, Letter to FAA at 46.]  Powerturbine also argues that the statements were made with malice because "[t]here was no reason to name Powerturbine in the challenged communications, and those statements were of mere convenience and persuasion to deflect from GKN and build their case against Powerturbine," and cites Swift & Co. v. Gray, 101 F.2d 976, 980 (9th Cir. 1939). [Doc. No. 38, PT's Opp. at 28.]  However, Swift's language about "mere convenience or persuasion" cited by Powerturbine refers to interested parties, and not to malice.  See Swift & Co., 101 F.2d at 980.

GKN argues that Clendenon's statement to the FAA that Powerturbine is a "well known parts supplier" does not evidence malice.  [See Doc. No. 37-3, Ex. 4, Letter to FAA at 46.]  It also states that it "was reasonable in concluding Powerturbine had removed reject tags from the fan blades because Powerturbine's standard practice is to remove reject tags from parts, and Powerturbine's president admits he conveyed that to GKN during their September, 2011 [sic] meeting."  [Doc. No. 44, GKN's Reply at 11-12; Doc. No. 37-5, Ex. 1 Deposition of Fred Grether, President of Powerturbine at 9-10, 12-13.]  GKN also argues that naming Powerturbine in the challenged communications does not evidence malice and was not for the purpose of deflecting attention away from GKN because "Powerturbine is the company which requested the overhaul and sent the fan blades to GKN."  [Doc. No. 44, GKN's Reply at 12; see also Doc. No. 37-2, Clendenon Decl. ¶ 7 ("I spoke to [FAA representative] Wong because I wanted to report what I believed in good faith was improper conduct by whoever removed the reject tags from the blades."] GKN also states that it was responding to customer inquiries for more information, and that GKN had "no obligation to refrain from identifying Powerturbine as the source of the blades."  [Doc. No. 44, GKN's Reply at 11-12.]

"The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable ground

for belief in the truth of the publication and thereafter acted in reckless disregard of the plaintiff's rights." <u>Taus</u>, 40 Cal. 4th at 721 (internal quotation omitted). Although the <u>Taus</u> court found that not revealing the identify of the plaintiff showed that the defendant did not make the statements out of hatred or ill will towards the plaintiff, the court did not state that revealing the name of the plaintiff evidences malice, as Powerturbine seems to argue. <u>Id.</u> at 722.

The burden of establishing malice is on the party asserting it. <u>See</u> <u>Taus</u>, 40 Cal. 4th at 721. In <u>Williams v. Taylor</u>, a California court of appeal found that the plaintiff did not show actual malice when the only evidence the he offered in support of his claim was a declaration that the defendant said that the plaintiff was a thief. 129 Cal. App. 3d 745, 752 (1982). The court concluded that the statement plaintiff was a thief was simply the defendant's "conclusion based upon his investigation of what appeared to be criminal conduct on the part of plaintiff." <u>Id.</u> The court held that "[i]f the publication is made for the purpose of protecting the interest in question, the fact that the publication is inspired in part by resentment or indignation at the supposed misconduct of the person defamed does not constitute an abuse of the privilege." <u>Id.</u> at 752-53 (quoting Rest. 2d Torts § 603, com. a.).

Powerturbine has not met its burden to demonstrate that GKN's statements to the FAA and the customers were motivated by malice. Rather, GKN's statements to the customers were motivated by the FAA's desire to quarantine the fan blades. [Doc. No. 37-2, Clendenon Decl. ¶ 15.] The statements to the FAA were motivated by a desire to address the problem of reject tags being removed from defective parts, rather than malice towards Powerturbine. [Doc. No. 37-3, Ex. 6, GKN Letter at 46 ("I told [the FAA] several times that the problem with Powerturbine was simply the one that brought it to light and that this process of a parts broker removing te reject

1  tags and sending the blades to another facility was an industry wide problem.")[6];

2  Doc. No. 37-3, Ex. 9, E-mail to FAA at 56 ("We still believe this [removing reject

3  tags] is an industry wide problem and not an isolated instance with Powerturbine.")[7];

4  Doc. No. 37-2, Clendenon Decl. ¶ 7.]

5      Powerturbine fails to demonstrate how naming Powerturbine in the letter was

6  motivated by hatred or ill will towards Powerturbine.  Rather, from the affidavits

7  and facts, GKN was likely motivated by a desire to respond to inquiries regarding

8  the facts surrounding the defective fan blades which the FAA sought to quarantine.

9  As the Williams court held, even if the statements were inspired in part by

10  resentment or indignation, because GKN's statements were made for the purpose

11  protecting the customers' interests by informing them of the unsafe condition of the

12  fan blades, GKN has not acted with actual malice.  See 129 Cal. App. 3d at 752-53.

13  Powerturbine has also not shown that GKN lacked reasonable ground for belief in

14  the truth of its statements and thereafter acted in reckless disregard of

15  Powerturbine's rights.  GKN had reasonable ground for belief in the truth of its

16  statements because the fan blades were not accompanied by reject tags, and affixing

17  these tags on defective parts is industry practice.  [Doc. No. 37-2, Clendenon Decl.

18

19

---

20  [6] Powerturbine objects to this exhibit under Federal Rules of Evidence 802 (hearsay) and 1002
(best evidence).  Powerturbine also argues that this exhibit lacks foundation and is argumentative.
21  [Doc. No. 38-2, Objections to Exhibits at 4.]  Again, Powerturbine presents no reasoning or analysis.
GKN responds that the email is not being offered for the truth of the matter asserted.  [Doc. No. 42,
22  GKN's Response to Objections at 9-10.]  Because the e-mail is not being offered for the truth of the
matter asserted, the Court overrules the objection under Rule 802.  GKN contends that it is "not clear
23  in what respect Powerturbine believes the e-mail violates Rule 1002, or is argumentative."  [Id.]
Because it is unclear why Powerturbine objects under Rule 1002 and why it believes the exhibit is
24  argumentative, the Court overrules the objection under Rule 1002.  GKN presents adequate foundation
for the e-mail because Clendenon states that he attended the meeting referenced in the e-mail, and
25  subsequently drafted the email.  [Doc. No. 37-2, Clendenon Decl. ¶ 11.]  Therefore, the Court
overrules the objection on this ground.
26

27  [7] Powerturbine objects to this exhibit under Federal Rules of Evidence 802 (hearsay), 1002 (bet
evidence), and 106 (completeness).  [Doc. No. 38-2, Objections to Exhibits at 4.]  For the reasons
28  stated above, the Court overrules the objections based on Rules 802 and 1002.  Powerturbine does not
explain how the exhibit is incomplete.  Accordingly, the Court overrules the objection on this ground
as well.

¶¶ 2, 6.[8]]

Accordingly, the statements do not constitute an abuse of the common interest privilege.  See id.  Because GKN has established that the common interest privilege applies to its statements to the FAA and to the customers, Powerturbine cannot establish a reasonable probability of prevailing on its claims, which are all based on these privileged statements.[9]

### III.   Premature Motion to Strike

Powerturbine argues that GKN's motion to strike is premature because discovery is still open and only one GKN witness has been deposed.  [Doc. No. 38, PT's Opp. at 30.]  Therefore, Powerturbine believes that "a ruling on the basis of a lack of evidence would be premature."  [Id.]  Powerturbine cites no case law to support its argument that a motion to strike under the anti-SLAPP statute is premature while discovery is still ongoing.  Powerturbine also argues that "to the extent this motion is a disguised motion for summary judgment, it is premature and should be denied in its entirety."  However, California courts have likened the anti-SLAPP procedure as akin to summary judgment.  See Daniels, 182 Cal. App. 4th at 215 (quoting Taus, 40 Cal. 4th at 714) ("[T]he Legislature . . . intended to establish a summary-judgment-like procedure available at an early stage of litigation . . . .").  Furthermore, the purpose of the anti-SLAPP statute is to allow the defendant to avoid the expense, time, and effort of protracted litigation that impedes its free speech and petition rights.  See Haight Ashbury Free Clinics, Inc., 184 Cal. App. 4th at 1558.  Accordingly, the Court denies Powerturbine's request that the Court deny this motion in its entirety on the grounds that it is premature.

---

[8] Powerturbine objects to paragraph 6 of Clendenon's declaration for lack of foundation.  [Doc. No. 38-2, Objections to Exhibits at 7.]  GKN argues that there is foundation for this testimony due to Clendenon's role as GKN's Quality Assurance Manager.  [Doc. No. 42, GKN's Response to Objections at 17-18.]  The Court overrules Powerturbine's objection because GKN has presented foundation for this testimony by explaining Clendenon's role within GKN in his declaration.  [Doc. No. 37-2, Clendenon Decl. ¶ 1.]

[9] As the statements to the FAA and the customers are privileged under the common interest exception, the Court does not address GKN's remaining defenses.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** GKN's special motion to strike, and **DISMISSES** with prejudice Powerturbine's third, fourth, fifth, and sixth claims. The Court **DISMISSES** without prejudice Powerturbine's eighth claim for unfair competition.  Powerturbine is **GRANTED** thirty (30) days from the date this Order is filed to amend its eighth claim to remove any reliance on GKN's statements to the FAA and the customers.

**IT IS SO ORDERED.**

**DATED:**  March 19, 2013

**IRMA E. GONZALEZ**
**United States District Judge**